HAZOURI, J.
E.C., a child, was charged by a consolidated Petition for Delinquency with burglary of a structure (Count I) and criminal mischief over $200 but less than $1,000 (Count II). There were five other juveniles charged in the same Petition. Each was charged with the same offenses as E.C. E.C. entered a plea of no contest to a misdemeanor charge of criminal mischief while reserving the right to appeal the ruling on the motion to suppress, as dis-positive. The trial court entered an Order of Disposition placing E.C. on probation and withholding adjudication. Joint and *605 several restitution was ordered in the amount of $920.96. We reverse.
The charges result from an incident where E.C. and the five other juveniles entered a house that was under construction and rode their bicycles throughout the house causing damages to the floor, the walls, and a closet door that the juveniles used as a ramp for the bicycles. The property was owned by American Financial Network who reported that the home had been locked and that the boys had gained entry through a rear sliding glass door. Bicycle tire marks were found throughout the walls of the entire house and there were seven holes in the walls.
Detective Cecala, from the Port St. Lu-cie Police Department, visited E.C.’s home and obtained the following statement, “I admit that I was there and I’m sorry. I know it was wrong, I made a bad decision, and I’ll never do it again. I rode my bike with all the other kids in the house.”
E.C. filed a motion to suppress requesting that the court suppress from use as evidence any statement, confession, or admission made by E.C. as being illegally obtained. The motion alleged that Detective Cecala visited E.C.’s home and made promises to E.C. and his mother that E.C. would not be charged in the matter nor would it become a court matter if E.C. made a statement admitting to his involvement in the incident. The motion further alleged that E.C. made a statement as a direct result of those promises which were not honored by the State.
An evidentiary hearing was held on the motion relating to E.C. and two of the other juveniles who had also filed motions to suppress. Detective Cecala testified that when he went to E.C.’s home to interview him, E.C. admitted to being involved. Detective Cecala testified that he explained to E.C.’s mother that his intention was to handle the complaint administratively and not take E.C. into custody. He denied leading E.C. to believe that charges would not be brought if he confessed. Detective Cecala was then questioned as to the other two juveniles and made essentially the same statements. He said that he explained to the juveniles’ parents that his intent was to handle the complaint administratively. He explained what was meant by “administratively” as follows:
One of the alternatives is through your office is to apply for the taking hold which is approved by a magistrate, physically take the child into custody, have him fingerprinted, photographed and transported to the Juvenile Detention Center. That’s one alternative. The other one, is to I feel if it’s a more lesser of a complaint to have it handled it administratively which is a letter from you ... I would imagine explaining to them a Court date has been set and that’s the way another complaint could be handled.
Detective Cecala testified that there were no promises made to the boys in exchange for their statements.
E.C.’s mother testified that Detective Cecala told her that if E.C. cooperated and gave his statement that there would be no charges filed, no court appearances, and no juvenile record. She stated that he told her, if anything, E.C. may have to see a juvenile probation officer as a means to pay restitution to the victim and write a letter of apology to the victim. Based on what Detective Cecala told her, she “saw no problem with my son being honest.” She believed that if E.C. was honest with Detective Cecala that he would not have a juvenile record and would not have to go to court.
After speaking with Detective Cecala, E.C.’s mother went to the Department of Juvenile Justice (the “Department”) where *606 she was told that the victim was seeking restitution in the amount of $1,800.10. She disagreed with the amount of restitution requested. After her meeting with the Department, at which E.C. gave a statement, her next contact with the Department was through a letter indicating that a court date had been set. She told the court that she would like a hearing where the victim could show documentation to substantiate the damages that are the basis for the requested restitution.
The parents of the other two juveniles also testified. They gave similar accounts of their meetings with Detective Cecala. They testified that Detective Cecala also told them that there would be no charges pressed and no court date. All of the witnesses testified that Detective Cecala seemed very nice and cooperative and was not at all coercive.
E.C.’s counsel argued that E.C. confessed in reliance on Detective Cecala’s statements that he would not press charges, therefore, the statements were involuntary and should be suppressed. The State argued that Detective Cecala complied with his promises to handle the case administratively by not taking the boys into custody and just turning the file over to the Department of Juvenile Justice.
The trial court found that there was clearly a promise made that if the boys were truthful to Detective Cecala that it probably would not go any further. The trial court then went on to say:
The hang up though obviously from the consistent testimony of the parents’ was restitution. I mean I think the promise was made and was followed through on. And in fact that it went to a diversion option. I guess the one parent allegedly didn’t get notice or something, diversion. And that hang up was the amount of the restitution, and that wasn’t worked out and so there was no choice but to file.
The trial court found that Detective Cecala made a promise which induced the statements; however, it also found that if E.C.’s mother had cooperated with the diversion and the restitution set up by the Department of Juvenile Justice that there would be no court proceedings. Based on that reasoning, the trial court denied the motion to suppress.
On appeal, E.C. argues that the trial court abused its discretion in denying his motion to suppress because Detective Cecala’s promise to handle it “administratively” is sufficient to render E.C.’s statements involuntary. A confession or inculpatory statement is not freely and voluntarily given if it has been elicited by direct or implied promises, however slight. See Walker v. State, 771 So.2d 578, 575 (Fla. 1st DCA 2000). In Walker, the first district noted that the promise of leniency alone is sufficient to render an inculpatory statement involuntary. In the instant case, the trial court clearly found that Detective Cecala made a promise of leniency. This promise of leniency was the quid pro quo for the inculpatory statements made by E.C. and, therefore, under Walker, the statements were involuntary.
The trial court’s finding that Detective Cecala’s statements induced E.C’s confession is presumptively correct and should not be disturbed absent an abuse of discretion. See Walker, 771 So.2d at 575 (citation omitted). There is competent substantial evidence on the record to support the trial court’s finding that the statements were involuntary. The trial court found that Detective Cecala’s statements went beyond informing E.C. of realistic penalties and encouraging him to tell the truth, but in fact was a promise of leniency or a promise not to prosecute. This renders the confession invalid.
*607 Without conceding that Detective Cecala made promises which induced E.C. to make inculpatory statements, the State argues that Detective Cecala fulfilled his promise and it was only after E.C. failed to agree to restitution that the petition for delinquency was filed. However, the State cites no support for its proposition that the confession, even though found to be involuntary, can now be admitted because Detective Cecala attempted to follow through on his promises. That does not change the court’s findings that the statements were influenced by Detective Cecala’s promises and therefore involuntary under Walker.
Based on its finding that the statements were involuntary, the trial court erred in denying the motion to suppress.
Reversed.
POLEN, C.J., and KLEIN, J., concur.