THOMPSON, J.
J.P., a minor, appeals an order adjudicating him delinquent for cruelty to animals and violating the terms of his probation. We affirm.
J.P. raises three issues on appeal which we address seriatim. First, J.P. contends that the trial court erred in denying his motion to suppress his written statement in which he admitted committing animal cruelty. In reviewing a denial of a motion to suppress, this court must take the trial court’s rulings as presumptively correct and accept its factual findings so long as those findings are supported by competent, substantial evidence. *1204 Walls v. State, 814 So.2d 1235 (Fla. 5th DCA 2002). In determining whether a juvenile’s confession is voluntary, the relevant circumstances are:
(a) the manner in which the police administered Miranda rights,
(b) the juvenile’s age, experience, education, background and intelligence,
(c) whether the juvenile had an opportunity to speak with his/her parents before confessing, and
(d) whether the juvenile executed a written waiver of the Miranda rights prior to making the confession.
Brancaccio v. State, 773 So.2d 582, 583-584 (Fla. 4th DCA 2000).
In this case, J.P.’s mother called the police because she thought he had killed her dog and that her other children might be in danger. The mother and stepfather agreed to take J.P. to meet the police at an intersection near their rural home. Deputy Graeber read J.P. his Miranda rights in the presence of J.P.’s stepfather. Graeber testified that J.P. appeared to understand the rights being read to him and executed a written waiver. Neither J.P. nor his parents requested that an attorney be present. J.P. agreed to make a statement. When Graeber began questioning J.P., J.P. would not respond, so Graeber gave him a statement form to complete. At that point, it was raining, so Graeber allowed J.P. to sit in the police car, and Graeber walked away from the car. J.P. testified that the deputy told him that if he did not want to complete a statement, he could write, “no statement” on the form. J.P.’s stepfather testified:
[T]he deputy had given [pen and paper] to [J.P.]. He walked to the back of his car, opened his trunk, took out the sheet of paper, then in turn walked around to the side of the car, laid it on the seat next to [J.P.], told him if he wanted to write a statement, there it was. And then all three of us walked to the back of the second patrol car and stood there and talked, and gave [J.P.] time.
Hi * *
The deputy never walked back up and spoke to [J.P.] All three of us walked back up. They were going to let [J.P.] go. He opened the door to let him out, and [J.P.] was writing. He then, in turn, closed the door and walked back and said, he’s writing.
In denying the motion to suppress the confession, the trial court, referring to Brancaccio, stated:
Now, number one says, the manner in which police administered Miranda rights. Open area for [J.P.], side of the road, plain view, father was present, father brought him to law enforcement, no handcuffs, no guns, out in the open, read it to him, [J.P.] signed a waiver card. Okay. It was raining, so the police officer, being nice, let him sit inside a patrol car to get out of the rain.
Two, juvenile’s age, experience, education, background and intelligence. Yes — I mean, on cross examination, [J.P.] admitted that he’s been in the system before. He thought he was going to see his probation officer. He has a little bit more experience in the juvenile system than, say, probably much— most children. He thought he was seeing his probation officer. He sees somebody — he sees probably about — probably once a month, once every two months....
[[Image here]]
Because it — and three talks about whether the juvenile’s had an opportunity to speak with his or her parents before confessing. [The stepfather] called up to the house. He had the time *1205 to walk up to the house, or walk partially up to the house, and walk back with his son. And you’re walking up, and there are patrol cars. [The stepfather] even said, when we brought him back in, that he’s back there with his own son.
They’re reading Miranda warnings. I mean, it’s specifically, do you wish to talk to us at this time; yes, I mean, these are very — I mean, this tells anyone that, hey, we’re going to be asking you questions. His dad’s right there.
Four, whether the juvenile executed a written waiver of Miranda rights prior to making a confession. We got one here. I mean he’s — I swear and affirm the above statements are correct and true, signed — signature of [J.P.]. And also, he has admitted on cross examination that he initialed J.P. across part of the Miranda warning box.
[[Image here]]
What we have to remember here is that he signed a waiver form and agreed to speak to them first. Then all these alleged statements, which whoever you want to believe made these statements, happened after he agreed to speak to them.
These cases that have been presented to the Court seem to talk about the surrounding circumstances when Miranda is being administered. Miranda had already been administered in this case, and now he’s sitting inside the car, being given pen and paper.
He didn’t change his mind. He didn’t indicate, I don’t want to speak to you anymore. He did not invoke his right to remain silent. His parent was there. He didn’t ask to speak to his father. He didn’t ask to speak to his mom. He didn’t invoke his right to counsel.
Pm going to deny the motion to suppress at this time.
We conclude that the trial court’s findings are supported by competent, substantial evidence and that there is no error in its ruling. Walls, 814 So.2d at 1236.
Additionally, J.P. argues that his statement should be suppressed because the deputies allegedly told him that a judge would be more lenient if J.P. admitted having committed the crime. J.P. testified:
Well [the deputies] said that — I—from what I thought, it was because — they said that if I was — that if I admitted to it, that I’d be better off, and the judge-they said-this is the quote that best I can remember. It was, the judge will be more lenient with somebody who admits .to what they did than somebody who denies it.
We conclude that the deputy’s alleged statement did not render J.P.’s statement involuntary. J.P. cites Walker v. State, 771 So.2d 573 (Fla. 1st DCA 2000) and E.C. v. State, 841 So.2d 604 (Fla. 4th DCA 2003), but those cases are distinguishable. In E.C. and Walker, the defendants’ statements were determined to be involuntary because the officers had promised the defendants that if they gave statements, they would not be arrested or charged. In this case, unlike the cited cases, the deputies did not promise J.P. that he would not be arrested or charged in exchange for his statement. Given the totality of the circumstances, we conclude that the trial court did not err when it denied J.P.’s motion to suppress.
Second, J.P. contends that the state failed to establish the corpus delicti of the offense and that the trial court should have granted J.P.’s motion for a judgment of acquittal. To establish the corpus delicti of a crime, the state must establish: 1) that a crime of the type charged was committed; and 2) that the *1206 crime was committed through the criminal agency of another. Franqui v. State, 699 So.2d 1312, 1317 (Fla.1997). To satisfy the first requirement, each element of the offense must be shown to exist. State v. Dionne, 814 So.2d 1087, 1091 (Fla. 5th DCA 2002). However, proof is not required that the accused committed the offense. Price v. State, 776 So.2d 1100 n. 1 (Fla. 5th DCA 2001).
We conclude that the state established the corpus delicti of the offense. J.P. was charged with animal cruelty under section 828.12(2), Florida Statutes, which provides that, a “person who intentionally commits an act to any animal which results in the cruel death, or excessive or repeated infliction of unnecessary pain or suffering, or causes same to be done,” commits a third degree felony. Before admitting J.P.’s confession, the state presented the testimony of J.P.’s mother and of the veterinarian who conducted an autopsy on the dog at the mother’s request. The mother testified that on 11 June 2003, she left J.P. at home with the dogs. After the mother returned home, one of the dogs came inside in obvious pain and distress. The next morning the dog was found dead. The veterinarian opined that the dog was attacked with something at least four or five centimeters in length, such as a screwdriver.
Finally, we find without merit J.P.’s argument that the trial court should have granted his motion for judgment of acquittal because the state was unable to establish that the dog examined by the veterinarian was the same dog owned by the mother.
AFFIRMED.
ORFINGER and TORPY, JJ., concur.