978 So.2d 225 (2008)
Gerald TELFORT, Appellant,
v.
STATE of Florida, Appellee.
No. 4D06-2490.
District Court of Appeal of Florida, Fourth District.
April 2, 2008.
*226 Carey Haughwout, Public Defender, and Tom Wm. Odom, Assistant Public Defender, West Palm Beach, for appellant.
Bill McCollum, Attorney General, Tallahassee, and August A. Bonavita, Assistant Attorney General, West Palm Beach, for appellee.
FARMER, J.
At the scene of a home burglary with some missing jewelry, investigators found a fingerprint. After defendant was charged with the crime, a fingerprint examiner testified at trial for the state that the print was defendant's. Not being content to rest on his own skills in the art, in response to a question by the prosecution, the examiner testified thus:

Q: Based on your training and experience . . . are you one hundred percent certain it matched the print of Mr. Telfort?

Defense: Objection to the percentage

Court: Rephrase your question.

Q: In your own words, what level of certainty?

A: There is no doubt that this is Mr. Telfort's fingerprint. In latent fingerprints, our department has provisions that another examiner must also view your work to verify the identification is actually one and the same. This print has been compared by two other examiners identifying Mr. Telfort's left index finger. [e.s.]
Rejecting defendant's objection that the testimony constituted improper bolstering, the court allowed the testimony to stand.
On appeal, Telfort relies on Schwarz v. State, 695 So.2d 452 (Fla. 4th DCA 1997), where we held an expert may not testify that the expert formed the opinion by conferring with others in the same field. As we explained, the issue is not whether the expert could testify that other experts in his field agreed with the opinion, but rather whether the expert could testify that he had consulted other experts in his same field to reach the opinion. We also pointed to cases from other jurisdictions holding that experts cannot bolster their opinions with the opinions of other experts who do not testify. See C.S.I. Chem. Sales Inc. v. Mapco Gas Prod. Inc., 557 N.W.2d 528 (Iowa App.1996) (rule of evidence allowing expert to testify regarding facts and data reasonably relied upon by other experts in the field does not empower them to testify that other experts support their opinion); Kim v. Nazarian, 216 Ill.App.3d 818, 159 Ill.Dec. 758, 576 N.E.2d 427 (1991) (fact that a colleague agreed with an experts opinion is of dubious value and party unable to cross-examine the corroborative opinion will likely be prejudiced). We said: "[s]uch testimony improperly permits one expert to become a conduit for the opinion of another expert who is not subject to cross-examination." Schwarz, 695 So.2d at 455 (citing Hutchinson v. Groskin, 927 F.2d 722 (2d Cir.1991)).
Schwarz was reviewed by the supreme court because of certified conflict. In Linn v. Fossum, 946 So.2d 1032 (Fla.2006), the court agreed with this Court:
"We conclude that referring to consultations with other experts creates the danger of bolstering the credibility of the testifying expert's opinion without providing the opposing party the ability *227 to effectively cross-examine the expert as to the basis for the opinion. Allowing the expert to testify on direct examination that he or she relied on consultations with other experts creates `too much of a possibility of an inference being drawn that these experts agreed' with the testifying expert. We therefore hold as a matter of law that under the Florida Evidence Code an expert is not permitted to testify on direct examination that the expert relied on consultations with colleagues or other experts in reaching his or her opinion." [c.o.]
Linn, 946 So.2d at 1039. Accordingly it was error to allow the testimony over defendant's objection.
Was the error prejudicial? Probably so, because without a confession in this case, the state would be hard pressed to make the error seem harmless. See Goodwin v. State, 751 So.2d 537 (Fla.1999) (focus of harmless error analysis is effect of error on trier of fact; question is whether it is reasonably possible error affected verdict). We thus turn to defendant's claim that his confession was involuntary.
When defendant was arrested by police, he was in a home with a quantity of controlled substances and several other people. He was not then charged with possession of drugs. Later he was questioned about the burglary and the missing items. The interrogator raised the subject of defendant's connection with the drugs. It sounded like this:

Q: [Y]ou told him that if he would cooperate and show you these houses, you might not file these charges?

A: I said that could happen, yes, sir.

Q: As is turned out, you did not file the drug charges, right?

A: I am a man of my word.

Q: You kept your word?

A: Yes.

Q: And your word was that you wouldn't file the charges.

A: No sir. I said that there is a possibility that the charges couldn't be filed.

Q: Okay. Little incentive?

A: Yes sir. To be honest with you, "little leverage" we call it.
The officer frankly admits he used "a little leverage" and that he "kept his word."[1]
Which obviously signifies his word was meant to leverage the confession. Defendant argued this made the confession involuntary. The judge disagreed, holding the confession admissible.
The evidence does not support the decision. As our supreme court has made clear:
"when a question arises as to the voluntariness of a confession, the inquiry is whether the confession was `free and voluntary; that is (it) must not be extracted by any sort of threats or violence, nor obtained by any direct or implied promises, however slight, nor by the exertion of any improper influence'." [e.s.]
Brewer v. State, 386 So.2d 232, 235 (Fla. 1980) (citing Bram v. United States, 168 U.S. 532, 542-43, 18 S.Ct. 183, 42 L.Ed. 568 (1897)). In E.C. v. State, 841 So.2d 604 (Fla. 4th DCA 2003), we faced a confession induced by implied promises of foregoing criminal charges. We said: "A confession or inculpatory statement is not *228 freely and voluntarily given if it has been elicited by direct or implied promises, however slight." 841 So.2d at 606.
By the officer's own words the promise of not charging possession was  at the very least  implied. In E.C. an implied promise of leniency was sufficient to render a confession involuntary. The testimony of the officer places this confession well within an inducement by implied promise not to charge other crimes if the accused confesses. That is enough to establish involuntariness.
Reversed.
TAYLOR, J., and DAVIDSON, LISA, Associate Judge, concur.
NOTES
[1] See MERRIAM WEBSTER'S UNABRIDGED DICTIONARY (CD-ROM edition)  [Entry term = word] (8 a(1): PROMISE "I give you my word" "kept her word" "as good as his word" (2): the honor involved in the keeping of a promise "pledged himself on his word to be present").