TAYLOR, J.
 

 Corey Jermaine Potts appeals his conviction and sentence for burglary of a dwelling. He argues that the trial court reversibly erred in allowing the fingerprint examiner to testify that his identification was verified by another examiner from a different police department, thereby bolstering his testimony. We agree and reverse for a new trial. We disagree, however, that the trial court erred in denying his motion for judgment of acquittal.
 

 At trial, Jacquemond Dieujuste testified that he left his home around 7:00 or 7:30 a.m. on November 10, 2008 and returned at about 10:15 a.m. after receiving a call from his sister that everything in the house was “tipped over.” He found the house in disarray. Bedrooms, which had been locked, were unlocked, and a plasma TV and new laptop were taken. Overall, about $14,000 tp $15,000 in items were missing.
 

 Police who responded to the burglary examined the outside of the home and found a bedroom window which had been broken from the outside. Also, the lock had been pried off a sliding glass door in the kitchen. This was determined to be the actual, point of entry into the home. A crime scene investigator was able to lift a fingerprint from the inside glass of the broken bedroom window. Its placement was consistent with someone reaching in and curling his fingers around the glass. The print was identified by the fingerprint examiner, Sergeant Thomas Tustin, as belonging to the defendant. .
 

 Dieujuste testified that he did not know the defendant. He did not give the defendant permission to be in his house on
 
 *294
 
 November 10, 2008 or at any other time, and there was no reason the defendant’s fingerprint should be in his house.
 

 Sergeant Tustin testified that his fingerprint examination revealed that the fingerprint lifted from the broken window belonged to the defendant. Over defense counsel’s objection, Sergeant Tustin testified that his findings had been verified by another examiner from a different agency. He added, “we wouldn’t be here if he didn’t verify it.” During closing argument, the state referred to Sergeant Tustin’s testimony about a second expert verifying his fingerprint identification.
 

 After the state rested, the defendant moved for a judgment of acquittal on the burglary count. He argued that the state failed to make a prima facie case that the defendant was the person who entered the residence to commit the theft. According to the defendant, the state did not prove when the fingerprint was left on the broken window or establish when the window was broken. The defendant renewed his motion after both sides rested.
 

 The jury found the defendant guilty of burglary of a dwelling. The trial court sentenced him to twelve years in prison with 129 days credit for time served.
 

 The defendant correctly argues that the trial court erred in permitting the fingerprint examiner to bolster his testimony by referring to the verification of his test results by another, non-testifying expert.
 
 See Telfort v. State,
 
 978 So.2d 225, 226-27 (Fla. 4th DCA 2008). In
 
 Telfort,
 
 the fingerprint examiner testified on direct about the level of certainty as to the fingerprint match to the defendant: “ ‘There is no doubt that this is Mr. Telfort’s fingerprint. In latent fingerprints,
 
 our department has provisions that another examiner must also view your work to verify the identification is actually one and the same. This print has been compared by two other examiners identifying Mr. Tel-fort’s left index finger.’ ” Id.
 
 at 226 (emphasis in original). We held it was error to allow this testimony over the defendant’s objection.
 
 Id.
 
 at 227. We reached the same result in
 
 Bunche v. State,
 
 5 So.3d 38 (Fla. 4th DCA 2009).
 

 We reject the state’s contention that the erroneous admission of Sergeant Tustin’s testimony regarding confirmation of his identification by a second examiner was harmless error because the defense did not object to the witness’s earlier reference to a second examiner. We disagree that this testimony was merely cumulative. The officer’s assertion that “we wouldn’t be here if he didn’t verify it” converted his earlier answer from a mere inference that a second identification was made to a certainty that it was.
 

 Further, during closing, the state compounded the error by commenting on Sergeant Tustin’s testimony about verification by a second person:
 

 [STATE]: But you know even Sergeant Tuskin talked about you know when [defense counsel] was questioning him about whether or not you know things happen when it comes to fingerprint identification, and the fact that it is left up to the person who’s examining them.
 

 First and foremost, he admitted that it happened. He admitted that he was familiar with that. But he also talked about the fact from questioning from [defense counsel] that there was a second party evaluation that takes place with any match. And he also said on [defense counsel’s] questioning that “we wouldn’t be here right now if that person disagreed.”
 

 We conclude, however, that the trial court did not err in denying the defen
 
 *295
 
 dant’s motion for judgment of acquittal. The state presented evidence from the owner of the home that he did not know the defendant and that he never gave the defendant permission to enter his home. In addition, the state presented testimony that the defendant’s fingerprint was found on the inside of the broken bedroom window of the private residence, which provided sufficient evidence for the trial court to submit the case to the jury.
 
 See Walker v. State,
 
 656 So.2d 950 (Fla. 5th DCA 1995) (finding defendant’s fingerprint, found on windowsill of backyard window leading into bedroom, sufficient to support burglary conviction);
 
 Sorey v. State,
 
 419 So.2d 810 (Fla. 3d DCA 1982) (holding that evidence that the object on which defendant’s fingerprints were found was located in a place inaccessible to the public established the defendant’s identity as the perpetrator of the restaurant robbery and was legally sufficient for the defendant’s conviction);
 
 Roberts v. State,
 
 268 So.2d 578 (Fla. 3d DCA 1972) (holding that where rape occurred at victim’s house and defendant had never been there before, evidence that fingerprints and palm prints found at scene of crime matched defendant’s prints was sufficient to sustain defendant’s conviction of rape).
 

 Reversed And Remanded For New Trial.
 

 GROSS, C.J. and HAZOURI, J., concur.