835 So.2d 404 (2003)
Carmela LIBERATORE and Umberto Liberatore, Appellants,
v.
Samuel KAUFMAN, M.D.; Samuel Kaufman, M.D., P.A.; Norman S. Cohen, M.D., Samuel Kaufman, M.D., Stewart P. Newman, M.D., and Susan Beil, M.D., P.A.; Women's Health Care Associates, P.A.; Women's Healthcare Associates, P.A.; and NME Hospitals, Inc., a foreign corporation, d/b/a West Boca Medical Center, Appellees.
Nos. 4D01-657, 4D01-3468.
District Court of Appeal of Florida, Fourth District.
February 5, 2003.
*405 Edna L. Caruso of Caruso, Burlington, Bohn & Compiani, P.A., West Palm Beach, and Robert W. Kelley and John J. Uustal of Sheldon J. Schlesinger, P.A., Fort Lauderdale, for appellants.
Adam Trachtenberg and Ralph O. Anderson of Hicks, Anderson & Kneale, P.A., Miami, for appellees Samuel Kaufman, M.D. and Samuel Kaufman, M.D., P.A.
Ghislaine Torres Bruner, Louise H. McMurray and James C. Sawran of McIntosh, Sawran, Peltz & Cartaya, P.A., Miami, for appellee West Boca Medical Center.

ON MOTION FOR REHEARING
STEVENSON, J.
We deny the motion for rehearing but withdraw our prior opinion filed on July 3, 2002, and substitute the following in its place.
Appellants, Carmela and Umberto Liberatore, brought a malpractice action against Dr. Samuel Kaufman and West Boca Medical Center, alleging negligence in the care and treatment of Carmela in the delivery of her second child. After a two-week trial, the jury returned a verdict for the defendants. Thereafter, both final judgments on the merits and final cost judgments were entered in favor of the appellees.[1] We reverse, finding that the trial court abused its discretion in allowing defendants to use a bulletin published by the American College of Obstetricians and Gynecologists (ACOG) to bolster the testimony of their expert witnesses and in allowing Dr. Kaufman to testify that he was recognized as a "top doctor" with a "good reputation" in a national survey.
*406 Carmela Liberatore had her first baby in New York in 1990 by cesarian section. She became pregnant with her second child in 1993 and began prenatal care with Dr. Kaufman. Kaufman and Liberatore agreed that she would try a VBAC (Vaginal Birth After Cesarean) procedure for her second delivery. Liberatore did not go into labor on her own, and, as agreed, on November 18, 1993, she went to the hospital to be induced. At approximately 8:30 a.m., the nurses administered Pitocin to induce labor. The Pitocin was ineffective and, at about 5 or 6 p.m., Dr. Kaufman broke her water. Liberatore began experiencing pain and required an epidural around 8:00 p.m. Around midnight, Liberatore began convulsing and Dr. Kaufman was called back to the hospital. Dr. Kaufman was forced to perform a vacuum extraction to remove the baby because the baby's heart rate was critically elevated.
Appellants alleged that as a result of Kaufman's vacuum extraction, Liberatore suffered significant vaginal lacerations, cervical lacerations, uterine atony and vaginal bleeding, which nearly caused her death. Dr. Kaufman attempted to suture some of the lacerations, but this did not stop the bleeding. Kaufman performed a hysterectomy, removing her uterus and cervix, but the bleeding still did not stop. Liberatore was stitched up and taken to the Intensive Care Unit, but continued to bleed. Dr. Klein, a specialist, was then brought in to perform hypogastric surgery. Approximately six or seven hours had passed since Liberatore first started bleeding after childbirth, and she had been transfused with between three to five times her normal blood volume. Appellants alleged that due to these complications, Liberatore was later forced to have her ovaries removed and undergo additional surgeries.
After a two-week medical malpractice trial, the jury returned a verdict in favor of Dr. Kaufman and the medical center. On appeal, the Liberatores challenge the trial court's evidentiary rulings regarding appellees' use of a bulletin published by the American College of Obstetricians and Gynecologists (ACOG) to question defense experts. ACOG bulletins are developed by a committee of six or seven ACOG members and are sent to member obstetricians throughout the country. These bulletins concern suggested treatment regimens, current trends, and other issues of concern to the practicing obstetrician.
Dr. William McLaughlin, West Boca Medical Center's expert obstetrician-gynecologist, testified that the care and treatment provided by Dr. Kaufman and the hospital to Ms. Liberatore did not deviate from the standard of care. Dr. McLaughlin was then questioned regarding his familiarity with the ACOG bulletins. He confirmed that he was, in fact, familiar with the bulletins and gave a brief description of what they were. McLaughlin was further questioned as to whether ACOG guidelines are met when a patient and a doctor jointly decide to do a VBAC and there are no contraindications; he confirmed that, under those circumstances, ACOG guidelines are met. He also testified that overall data suggests a seventy to eighty percent success rate with VBACs regardless of the reason for the original cesarean; according to Dr. McLaughlin, the ACOG guidelines, which provide that approximately eighty percent of patients having low transverse cesarean sections go on to have successful vaginal births the second time, are consistent with this data.
Dr. Clark, specializing in obstetrics and gynecology, opined that Dr. Kaufman did not deviate from the standard of care by pursuing a vaginal delivery or by inducing labor with Pitocin. Clark too was questioned *407 about the ACOG bulletin and stated that "these [bulletins] don't represent the standard of care, that is, they don't represent the only way people can do it, but they do represent one appropriate standard of care." Clark testified that, as long as Dr. Kaufman followed the ACOG bulletin, he did not deviate from the standard of care:
This is certainly not the only way to manage a problem, there may be other ways which are equally, equally appropriate, but certainly no one can claim that if someone did it according to one of these bulletins that this would be in violation of standard of care.
In addition, Dr. Kaufman was questioned as to whether the ACOG bulletins represent the proper standard of care; he replied that "the ... ACOG said, hey, it's safe to do this."
Experts cannot, on direct examination, bolster their testimony by testifying that a treatise agrees with their opinion. See § 90.706, Fla. Stat. (2000)[2]; Chorzelewski v. Drucker, 546 So.2d 1118 (Fla. 4th DCA 1989); Quarrel v. Minervini, 510 So.2d 977 (Fla. 3d DCA 1987); Tallahassee Mem'l Reg'l Med. Ctr. v. Mitchell, 407 So.2d 601 (Fla. 1st DCA 1981); see also Green v. Goldberg, 630 So.2d 606, 609 (Fla. 4th DCA 1993) (stating that "[u]nder section 90.706, Florida Statutes (1991), authoritative publications can only be used during the cross-examination of an expert and not to bolster the credibility of an expert or to supplement an opinion of the doctor which has already been formed"). Despite this prohibition, the opinions of Drs. Clark and McLaughlin as to Dr. Kaufman's standard of care were clearly supported and reinforced with the ACOG bulletin. Dr. Kaufman himself even relied upon the bulletin to support the standard of care he provided Liberatore. Consequently, we agree that the ACOG bulletin was improperly used and that the trial court's ruling in this regard was error.[3]
Additionally, we find that Dr. Kaufman should not have been permitted to testify that for the last three years he had been on a list of "top doctors" published by the Center for Study of Services. This court has previously found that such testimony was error. See Tomlian ex rel. Tomlian v. Grenitz, 782 So.2d 905, 907 (Fla. 4th DCA)(finding it was error for the defendant physician "to blurt out that he had been listed as a `top doctor' in a local magazine"), review granted sub nom. Humana of Fla., Inc. v. Tomlian, 804 So.2d 329 (Fla.2001).
Accordingly, we reverse the final judgments entered in favor of appellees and the final judgments to tax costs as to Dr. Kaufman and West Boca Medical Center, and remand for a new trial. We find it *408 unnecessary to address the other issues raised on appeal.
REVERSED and REMANDED.
POLEN, C.J., and TAYLOR, J., concur.
NOTES
[1] Final Cost Judgments were entered on August 7, 2001, in favor of West Boca Medical Center in the amount of $31,932.30 and on August 14, 2001, in favor of Samuel Kaufman in the amount of $16,030.00.
[2] Section 90.706 provides in part:

Authoritativeness of literature for use in cross-examination.Statements of facts or opinions on a subject of science, art or specialized knowledge contained in a published treatise, periodical, book, dissertation, pamphlet, or other writing may be used in cross-examination of an expert witness....
[3] We find that the issue was properly preserved for appellate review. Appellants objected to the procedure of allowing the ACOG bulletin to be used for any purpose other than impeachment when it was first presented during the cross-examination of plaintiffs' expert, Dr. Robert Eden, a specialist in high risk obstetrics. When the trial court denied the objection, appellants requested a standing objection. Subsequently, the ACOG bulletin was again used for a purpose other than impeachment while other witnesses were testifying. We find that appellants' standing objection was sufficient to preserve the objection as to this latter use of the ACOG bulletin as well.