861 So.2d 53 (2003)
Gary R. DONSHIK, M.D., and Cardiology Associates, Inc., Appellants,
v.
Alan SHERMAN, Guardian of the Person and Property of Joseph Sherman, Appellee.
No. 3D02-2241.
District Court of Appeal of Florida, Third District.
September 10, 2003.
Rehearing and Rehearing Denied December 10, 2003.
*54 Wicker, Smith, O'Hara, McCoy, Graham & Ford, P.A. and Shelley H. Leinicke (Ft.Lauderdale), for appellant.
Podhurst, Orseck, P.A. and Joel S. Perwin; Abramowitz & Pomerantz, P.A. (Sunrise), for appellee.
Before LEVY, GERSTEN, and GREEN, JJ.
Rehearing and Rehearing En Banc Denied December 10, 2003.
GREEN, J.
Appellants, Gary R. Donshik, M.D. and Cardiology Associates, Inc. (collectively, "Dr. Donshik"), appeal a final judgment entered against them, pursuant to a jury verdict, in a medical malpractice action brought by appellee, Alan Sherman, Guardian of the person and property of Joseph Sherman. Dr. Donshik raises three issues on this appeal, one of which we find to be meritorious enough to warrant a new trial. We therefore reverse the final judgment for the reasons specified herein.
This action began after Joseph Sherman ("Sherman") sustained a major debilitating stroke in April 1988 while under the medical care of Dr. Donshik for cardiovascular disease. Dr. Donshik, a board certified physician in cardiovascular disease and internal medicine, had been treating Joseph Sherman for over ten years. Prior to his stroke, Sherman, 68 years old, was overweight with a longstanding history of asymptomatic bilateral carotid artery disease, high blood pressure, smoking, elevated lipids and hypertension. He had undergone coronary by-pass surgery ten years prior to the stroke at issue here.[1]
The issue in this case was whether Dr. Donshik was negligent in failing to prophylactically treat Sherman surgically, rather than medically, to reduce the risk of another stroke. The plaintiff's theory of liability in this case was essentially that because Sherman was suffering from asymptomatic carotid artery disease, Dr. Donshik should have recommended that he be treated surgically, to reduce the risk of a stroke, in accordance with the findings from an earlier *55 Asymptomatic Carotid Atherosclerosis Study ("ACAS").[2]
According to the ACAS findings, which were published in the Journal of the American Medical Association in March 1995[3], ninety-five percent (95%) of the study's patients who opted for the surgical procedure known as a carotid endarterectomy avoided a stroke, whereas eighty-nine percent (89%) of the patients who were treated only medically avoided a stroke. For males, the study found that ninety-six percent (96%) of the participants who had the surgery remained stroke free and eighty-eight percent (88%) who were treated medically remained stroke free. Sherman's experts all opined that, in accordance with this report, he would have remained stroke free had Dr. Donshik treated him surgically rather than medically. Although Dr. Donshik and the defense experts acknowledged the significance of the ACAS report, they disagreed that it was authoritative or that it set the standard of care for the treatment of all asymptomatic patients.[4] They maintained that the ACAS report was inapplicable to Sherman because although there were patients in the study with individual risk factors such as obesity, bilateral carotid artery disease, smoking history, etc., Sherman had, not one, but all of these risk factors. The defense further contended that the ACAS report's findings revealed that there was an overwhelming probability that a patient would not suffer a stroke with either medicinal or surgical treatment.
During Sherman's case in chief the plaintiff was permitted to introduce the ACAS report into evidence through one of the plaintiff's experts. The defense objected on grounds that the admission of this report impermissibly bolstered the credibility of the plaintiff's expert opinions and was otherwise violative of section 90.706 of the Florida Evidence Code. See § 90.706, Fla. Stat. (1987). This objection was overruled.
The plaintiff thereafter successfully argued to the jury that Dr. Donshik breached the standard of care set forth in the ACAS report by not treating Sherman surgically. The jury returned a verdict for the plaintiff. After the denial of post-trial motions, Dr. Donshik instituted this appeal.
Dr. Donshik argues, and we agree, that the trial court abused its discretion when it permitted the introduction of the ACAS report as part of the plaintiff's case in chief in violation of section 90.706 of Florida's Evidence Code. According to this statute, which codified Florida case law:
Statements of facts or opinions on a subject of science, art, or specialized knowledge contained in a published treatise, periodical, book, dissertation, pamphlet, or other writing may be used in *56 cross-examination of an expert witness if the expert witness recognizes the author or the treatise, periodical, book, dissertation, pamphlet, or other writing to be authoritative, or, notwithstanding nonrecognition by the expert witness, if the trial court finds the author or the treatise, periodical, book, dissertation, pamphlet, or other writing to be authoritative and relevant to the subject matter.
Section 90.706 does not permit statements in a learned treatise to be used as substantive evidence since the treatise would be hearsay if offered as substantive evidence. Green v. Goldberg, 630 So.2d 606, 609 (Fla. 4th DCA 1993). To date, no hearsay exception has been recognized by any Florida court for the contents of a treatise and we decline to do so now. See Charles W. Ehrhardt, Florida Evidence § 706.1 (2000 ed.). Instead, Florida courts have uniformly held that published treatises, books or writings such as the ACAS report, which purport to be authoritative, may not be used on direct examination as substantive proof to bolster the credibility of a party's expert witness. See Liberatore v. Kaufman, 835 So.2d 404, 407 (Fla. 4th DCA 2003) ("Experts cannot, on direct examination, bolster their testimony by testifying that a treatise agrees with their opinion."); Erwin v. Todd, 699 So.2d 275, 278 (Fla. 5th DCA 1997) (holding that it was error to permit defense counsel to question medical expert during direct examination about a medical journal article and for expert to read portions of that article into evidence); Green v. Goldberg, 630 So.2d 606, 609 (Fla. 4th DCA 1993) ("Under section 90.706, ... authoritative publications can only be used during the cross-examination of an expert and not to bolster the credibility of an expert or to supplement an opinion of the doctor which has already been formed."); Costanzo v. Agency Rent-A-Car, Inc., 560 So.2d 265, 266 (Fla. 4th DCA 1990) (finding error in permitting the credibility of expert witness to be bolstered through use of a medical treatise); Quarrel v. Minervini, 510 So.2d 977, 978 (Fla. 3d DCA 1987) ("Medical treatises cannot be used to bolster the testimony of a physician on direct examination."); Medina v. Variety Children's Hosp., 438 So.2d 138, 139 (Fla. 3d DCA 1983) (same). See also Tallahassee Mem'l Reg'l Med. Ctr. v. Mitchell, 407 So.2d 601, 602 (Fla. 1st DCA 1981) (holding that a publication cannot be used under section 90.706 to "supplement the opinion of the doctor which had already been formed and testified to.").
We think that the introduction of the ACAS report during the plaintiff's case in chief served only to impermissibly bolster the credibility of the plaintiff's experts and diminish the credibility of the defense expert's opinions on the ultimate issue in this malpractice case. Where, as here, the competing expert opinions, on both sides, were the focal point of the trial, we cannot deem the error in the introduction of the ACAS report to be harmless. Myron v. Doctors Gen. Hosp., Ltd., 704 So.2d 1083, 1092 (Fla. 4th DCA 1997).
Dr. Donshik next argues that the trial court erred in denying his motion for directed verdict on the causation issue under the standard set forth in Gooding v. University Hospital Building, Inc., 445 So.2d 1015 (Fla.1984). Under Gooding, the appellee was required to show that Sherman's stroke was more likely than not the result of Dr. Donshik's failure to treat him surgically as opposed to medically. Id. at 1020. Dr. Donshik maintains that Sherman cannot meet this standard where, according to the findings of the ACAS report, the difference between Sherman's chances of avoiding a stroke with surgical treatment and his chances of avoiding a *57 stroke with medical treatment alone was statistically insignificant (i.e., 95% v. 89%).
The appellee points out, however, that, notwithstanding the data from the ACAS report, two of its experts independently testified that surgery, more likely than not, would have prevented Sherman's stroke. We find that this evidence satisfied the Gooding standard and created a jury question on the issue of causation. Accordingly, we find no error in the trial court's denial of motion for directed verdict on this issue.
Finally, and alternatively, Dr. Donshik posits that he was entitled to a directed verdict on the issue of actual causation where Sherman's claims were based upon the assumption that Sherman would have agreed to the surgery if it had been recommended to him. We find no merit to this argument. Even if Sherman would have been able to testify as to how he would have proceeded based upon a recommendation for surgery[5], such testimony would have been inadmissible as conjecture or speculation and violative of the rule established by our supreme court in Drackett Products Co. v. Blue, 152 So.2d 463, 465 (Fla.1963):
A statement by a witness as to what action he would have taken if something had occurred which did not occurparticularly in those instances where such testimony is offered for the purpose of supporting a claim for relief or damagesor what course of action a person would have pursued under certain circumstances which the witness says did not exist will ordinarily be rejected as inadmissible and as proving nothing.
See also LeMaster v. Glock, Inc., 610 So.2d 1336, 1338 (Fla. 1st DCA 1992) ("It has long been the rule that a witness's opinion as to what would have happened if circumstances were different constitutes rank speculation that is not competent evidence[.]").
Thus, for the foregoing reasons, we reverse the final judgment and remand for a new trial consistent with this opinion.
NOTES
[1] Prior to the stroke at issue, Sherman had suffered another stroke while en route to a doctor's office for a prostate biopsy.
[2] This study was funded by an investigator-initiated research grant from the U.S. Public Health Service's National Institute of Neurological Disorder and Stroke. Dr. James F. Toole, an expert witness for the plaintiff at the trial below, was the chair of the executive committee and publication committee for this study.
[3] It was later referenced by the American Heart Association.
[4] Indeed, Dr. Donshik's experts relied upon Dr. Toole's testimony as the study coordinator, that the study was not intended to be the standard of care in determining and directing surgeons on which patients to operate because each patient had to be individualized. Dr. Toole further agreed that the ACAS report did not conclude that all asymptomatic patients such as Sherman should undergo endarterectomies. He did further opine, however, that, within a reasonable degree of medical certainty, Sherman would have avoided a stroke with an endarterectomy.
[5] Due to the debilitating effects of the stroke, Sherman was unable to testify at the trial.