LAWSON, J.
Nationwide Mutual Fire Insurance Company appeals from a final judgment entered following a $3.99 million jury verdict entered in favor of Nationwide’s insured, Mark W. Darragh. Nationwide provided uninsured motorist coverage in the amount of $200,000 to Darragh. We agree with Nationwide that the trial court erred in refusing to instruct the jury to reduce future economic damages to present value in rendering its verdict. See Dupuis v. Heider, 113 Fla. 679, 152 So. 659, 662 (1934); Florida East Coast Ry. Co. v. Young, 104 Fla. 541, 140 So. 467 (1932); Florida East Coast Ry. Co. v. Lassiter, 58 Fla. 234, 50 So. 428 (1909). Milton v. Reyes, 22 So.3d 624, 624-25 (Fla. 3d DCA 2009); Howell v. Woods, 489 So.2d 154, 155 (Fla. 4th DCA 1986); Seaboard Coast Line R.R. Co. v. Burdi, 427 So.2d 1048, 1050 (Fla. 3d DCA 1983); Seaboard Coast Line R.R. Co. v. Garrison, 336 So.2d 423, 425 (Fla. 2d DCA 1976); Norman v. Mullin, 249 So.2d 733, 734 (Fla. 2d DCA 1971).[1] Accordingly, we reverse the por *899 tion of the verdict awarding future economic damages, and remand for a new trial as to future economic damages only. See, e.g., Milton, 22 So.3d at 625. We find no error in the trial court’s decision to allow testimony of the full amount of Dar-ragh’s past medical bills pursuant to section 768.76, Florida Statutes (2009) and Goble v. Frohman, 901 So.2d 830 (Fla.2005). The trial court properly treated the lesser amount negotiated for payment by Darragh’s private health insurer as a collateral source set-off to be made by the judge after trial. See Nationwide Mut. Fire Ins. Co. v. Harrell, 53 So.3d 1084 (Fla. 1st DCA 2010).
For the benefit of the parties and the trial court on retrial, we address one other evidentiary issue relating to Dar-ragh’s future economic damages claim. Over Nationwide’s many and various objections, Darragh was allowed to personally testify as to the value of future pension benefits that he claims to have lost from the United States military as a result of injuries sustained in the underlying automobile accident. It appears that Darragh based this testimony exclusively on information he gleaned from websites maintained by the United States government. Copies of pages from these websites were also introduced into evidence over Nationwide’s objections. We agree with Nationwide that the trial court erred in permitting this testimony and admitting printed copies of the website pages into evidence, on this record.
The website materials attempt to simplify and explain in lay terms how one can estimate the amount of future potential military retirement benefits, with the following cautions:
These results are based on your assumptions. The future will differ from these assumptions and actual results will differ correspondingly. Remember these results are not guaranteed; they are merely estimates. This point cannot be emphasized too heavily — there is no guarantee that the assumptions will all prove correct. This is why you should “play” with the assumptions.
The intent of this analysis is to help you to make a fairly simple and direct estimate of the financial flow resulting *900 from your retirement and be able to investigate some of the factors that influence the result.
Nationwide’s objections to the admission of these documents at trial included a hearsay objection and an objection that the documents had not been properly authenticated. Darragh countered the hearsay objection by arguing that the website pages fell within the hearsay exception for public records and reports in section 90.803(8), Florida Statutes, but made no attempt to authenticate them as such. See, e.g., Jacksonville Elec. Auth. v. Dep’t of Rev., 486 So.2d 1350, 1354 (Fla. 1st DCA 1986) (“Public records and reports are admissible as an exception to the hearsay rule, section 90.803(8), provided they are authenticated, section 90.901, by a custodian, sections 90.902(4) and 90.955.”); see also St. Luke’s Cataract and Laser Inst., P.A. v. Sanderson, 2006 WL 1320242 (M.D.Fla. May 12, 2006) (“Web-sites are not self-authenticating. To authenticate printouts from a website, the party proffering the evidence must produce ‘some statement or affidavit from someone with knowledge [of the website] ... for example [a] web master or someone else with personal knowledge would be sufficient.’ ”) (citations omitted). Darragh’s argument below and on appeal also fails to recognize that section 90.803(8) limits admissibility of public records to those “setting forth the activities of the office or agency, or matters observed pursuant to duty imposed by law as to matters which there was a duty to report. ...” The government website printouts admitted below do not simply set forth the activities of a government agency or matters observed pursuant to a duty to report. Cf. Sikes v. Seaboard Coast Line R.R. Co., 429 So.2d 1216 (Fla. 1st DCA 1983) (finding Florida Driver’s Handbook did not fall under either category of public record admissible under section 90.803(8)). Accordingly, the trial court erred in admitting these website printouts under the public records exception.
Darragh alternatively argues that the government website information was admissible under section 90.202(12), which allows a court to take judicial notice of facts “that are not subject to dispute because they are capable of accurate and ready determination by resort to sources whose accuracy cannot be questioned[.]” We agree that some of the factual tables copied from the website would qualify for judicial notice under section 90.202(12). However, to rule the basic attempt to explain and simplify into lay terms the assumptions and calculations necessary to estimate future potential retirement benefits admissible pursuant to section 90.202(12) would be inconsistent with the principles underlying our jury system. As explained in Maradie v. Maradie, 680 So.2d 538 (Fla. 1st DCA 1996).
In our justice system, the practice of taking judicial notice of adjudicative facts should be exercised with great caution. This caution arises from our belief that the taking of evidence, subject to established safeguards, is the best way to resolve disputes concerning adjudicative facts. When a matter is judicially noticed “it is taken as true without the necessity of offering evidence by the party who should ordinarily have done so.” Thus, historically, “judicial notice applies to self-evident truths that no reasonable person could question, truisms that approach platitudes or banalities.”
Id. at 541 (internal citations omitted) (quoting Makos v. Prince, 64 So.2d 670, 673 (Fla.1953) and Hardy v. Johns-Manville Sales Corp., 681 F.2d 334, 347-48 (5th Cir.1982)). In short, if this authoritative source can be admitted into evidence simply because the trial court can readily verify that it is an authoritative source, the *901 same rule should apply to other authoritative sources. It does not. Rather, under our evidence code “[statements of facts or opinions on a subject of ... specialized knowledge contained in a published treatise ... or other [authoritative] writing may [only] be used in cross-examination of an expert witness ....”§ 90.706, Fla. Stat. (2010). “Section 90.706 does not permit statements in a learned treatise to be used as substantive evidence since the treatise would be hearsay if offered as substantive evidence.” Donshik v. Sherman, 861 So.2d 53, 56 (Fla. 3d DCA 2003). “This is so because ‘the opposing party cannot cross-examine and impeach the source of the hearsay.’ ” Duss v. Garcia, 80 So.3d 358, 364 (Fla. 1st DCA 2012) (quoting In re S.E., 946 So.2d 620, 622 (Fla. 2d DCA 2007)). This was one of the primary arguments that Nationwide made to the trial court, and repeated on appeal — that by admitting the website information into evidence and allowing Darragh to testify from it, Nationwide had no way to test the methods, assumptions and underlying explanations for Darragh’s ultimate conclusions. On this record, we agree.
Finally, Darragh alternatively argues that his testimony on this issue was based upon formulas easily gleaned from federal statutes, and that the trial court properly took judicial notice of these statutes. Clearly, a trial court is authorized to take judicial notice of a federal statute. See § 90.201(1), Fla. Stat. (2009). The problem here is that we cannot find the information forming the basis of Darragh’s testimony in any of the statutes Darragh cites. Although Darragh’s counsel argued that the website information mirrored federal law, he did not provide copies of the statutes themselves — only citations. And, the information is simply not readily apparent from the cited statutes. If, on remand, Darragh can locate a statute that plainly lays out a mathematical formula for calculation of his claimed retirement benefit, we would agree that Darragh could “plug the numbers” into that formula without the aid of an expert witness — thus providing a basis for the jury’s consideration of this element of future economic damages. But, on this record, we agree with Nationwide that simply admitting the website pages, and allowing Darragh to testify from them, was improper.
As to all other issues, we affirm the jury’s verdict and the trial court’s final judgment.
AFFIRMED IN PART; REVERSED IN PART AND REMANDED.
COHEN and JACOBUS, JJ., concur.

. At trial, Nationwide requested that the jury be instructed as to this issue using Standard Jury Instruction 6.10. The trial court declined to give the instruction after hearing *899 argument from Darragh’s counsel, who believed that the case law requiring a trial court to instruct the jury to reduce future economic damages to present value had been superced-ed by an amendment to section 768.77, Florida Statutes, in 1999. See Ch. 99-225, § 7, Laws of Fla. Contrary to Darragh’s argument, the requirement that a jury be instructed, upon request, to reduce future economic damages to their present value was a common law requirement that pre-dated the enactment of section 768.77, Florida Statutes, by many decades — as can be seen from the cases cited above dating back to 1909. Section 768.77(1) was originally enacted as part of the Tort Reform Act of 1986, see Ch. 86-160, § 56, Laws of Fla., and required the trier of fact in negligence actions to itemize its verdict into economic losses, noneconomic losses and punitive damages. Subsection two required further itemization between past and future losses, and required future economic losses to be "computed [on the verdict form itself] before and after reduction to present value.” Id. The 1999 amendment simply removed the requirement for an itemized verdict form reflecting the present value calculation. Ch. 99-225, § 7, Laws of Fla. Contrary to Darragh’s argument, the legislature's decision to remove the requirement that a jury detail its present value calculation on an itemized verdict form cannot be read as abrogating the longstanding common law requirement that a jury be instructed to reduce future economic damages to present value. See, e.g., Essex Ins. Co. v. Zota, 985 So.2d 1036, 1048 (Fla.2008) ("A statute ... designed to change the common law rule must speak in clear, unequivocal terms, for the presumption is that no change in the common law is intended unless the statute is explicit in this regard.”) (quoting Carlile v. Game & Fresh Water Fish Comm'n, 354 So.2d 362, 364 (Fla. 1977)).