DISTRICT COURT OF APPEAL OF THE STATE OF FLORIDA
FOURTH DISTRICT

**PHILIP MORRIS USA, INC.,** and **R.J. REYNOLDS TOBACCO COMPANY,**
Appellants,

v.

**ROSE POLLARI,** as Personal Representative of the
Estate of PAUL POLLARI,
Appellee.

No. 4D16-334

[August 30, 2017]

Appeal and cross-appeal from the Circuit Court for the Seventeenth Judicial Circuit, Broward County; John J. Murphy, III, Judge; L.T. Case No. 14001563 CA (19) and 08-80000 (19).

Joseph H. Lang, Jr., of Carlton Fields Jorden Burt, P.A., Tampa, Lauren R. Goldman and Michael Rayfield of Mayer Brown LLP, New York, NY, for appellant/cross-appellee Philip Morris USA, Inc.

William L. Durham II, Val Leppert and Philip Green of King & Spalding LLP, Atlanta, GA, for appellant/cross-appellee R.J. Reynolds Tobacco Company.

Courtney Brewer and John S. Mills of The Mills Firm, P.A., Tallahassee, for appellee/cross-appellant.

KLINGENSMITH, J.

Philip Morris USA, Inc. ("PM") and R.J. Reynolds Tobacco Co. ("RJR") (collectively, "Defendants") appeal the final judgment of an *Engle*[1] progeny case in favor of Rose Pollari ("Plaintiff"), as personal representative of the estate of her deceased husband, Paul Pollari. Though the parties raise

---

[1] *Engle v. Liggett Grp., Inc.*, 945 So. 2d 1246 (Fla. 2006).

numerous issues on appeal and cross-appeal,[2] we write only to address Defendants' argument that the trial court erred by admitting into evidence several Surgeon General's Reports on cigarettes (the "Reports").  On that issue, we agree and reverse.

Before trial, Defendants moved to exclude from evidence as inadmissible hearsay "Surgeon Generals' reports . . . that have been published in the last 20 years," including the Reports from 2010, 2012, and 2014.  Plaintiff did not dispute the Reports were hearsay, but argued they were admissible under the exceptions for public records and adoptive admissions.  The trial court denied Defendants' motion, clearing the way for their later admission into evidence.

At trial, Plaintiff's counsel endorsed the Surgeon General as a leading medical authority "on cigarette smoking and health and nicotine addiction." Wide-ranging excerpts from the 2010, 2012, and 2014 Reports were admitted as evidence and made available to the jury during deliberations.  The record is clear that Plaintiff's counsel relied on these Reports at every major stage of the trial for numerous propositions, and read various portions during opening statements, the presentation of expert witness testimony, and closing arguments.

In response to Defendants' appeal, Plaintiff makes three arguments to support the admissibility of the Reports:  (1) the Reports were not hearsay because they were not offered for the truth of the matters asserted, but only to show notice; (2) the Reports qualified under the public records exception to hearsay; and (3) the Reports qualified as adoptive admissions

---

[2] Defendants argue the preclusive application of the *Engle* findings to Plaintiff's case violated due process principles, and that federal law impliedly preempted Plaintiff's strict liability and negligence claims that relied on the *Engle* findings. As Defendants concede, precedent clearly rejects these arguments. *See R.J. Reynolds Tobacco Co. v. Marotta*, 214 So. 3d 590, 596–605 (Fla. 2017); *Philip Morris USA Inc. v. Douglas*, 110 So. 3d 419, 436 (Fla. 2013); *Philip Morris USA Inc. v. McKeever*, 207 So. 3d 907, 907 (Fla. 4th DCA 2017).  On cross-appeal, Plaintiff asserts the trial court should not have reduced the initially awarded amount of compensatory damages based on the jury's allocation of comparative fault, as the jury found Defendants liable for intentional torts.  Plaintiff acknowledges that this court's holding in *R.J. Reynolds Tobacco Co. v. Schoeff*, 178 So. 3d 487, 496 (Fla. 4th DCA 2015), *rev. granted*, No. SC15-2233, 2016 WL 3127698 (Fla. May 26, 2016), required the damages reduction since the substance of the action was "a products liability suit based on conduct grounded in negligence." *See also R.J. Reynolds Tobacco Co. v. Grossman*, 211 So. 3d 221, 227 (Fla. 4th DCA 2017). These issues are moot because we are remanding this matter for a new trial.

by Defendants under an exception to hearsay. After careful consideration, this court has determined that each of these arguments lack merit, and the Reports should not have been admitted into evidence at trial.

"A trial court's ruling on the admissibility of evidence is reviewed for an abuse of discretion," *Jones v. State*, 127 So. 3d 622, 624 (Fla. 4th DCA 2013), but legal questions of whether evidence "falls within the statutory definition of hearsay," or "is admissible in evidence under an exception to the hearsay rule" are reviewed de novo. *Smith v. State*, 186 So. 3d 1056, 1060 (Fla. 4th DCA 2016) (quoting *Browne v. State*, 132 So. 3d 312, 316 (Fla. 4th DCA 2014)).

A. THE SURGEON GENERAL REPORTS WERE HEARSAY

In her answer brief, Plaintiff suggests the Reports were not hearsay because they were not offered to prove the truth of the matters asserted therein. This argument lacks merit.

Under the Florida Evidence Code, " '[h]earsay' is a statement, other than the one made by the declarant while testifying at the trial or hearing, offered in evidence to prove the truth of the matter asserted." § 90.801(1)(c), Fla. Stat. (2015). Hearsay statements are "inadmissible at trial except as specifically provide[d] by statute." *Reynolds v. State*, 934 So. 2d 1128, 1139 (Fla. 2006); *see also* § 90.802, Fla. Stat. (2015). Such statements can only be admitted into evidence if "offered in *strict* compliance with the requirements" of a statutory exception to the hearsay rule. *Yisrael v. State*, 993 So. 2d 952, 957 (Fla. 2008). As the party introducing the Reports, Plaintiff had the burden to show that the Reports were not hearsay or were subject to a statutory exception. *Id.* at 956.

The Reports were hearsay because they consisted of multiple levels of out-of-court statements by several declarants who did not testify at trial, and were offered to prove their truth. § 90.801(1)(a), Fla. Stat. (2015). The trial transcript shows that at all stages of the trial, Plaintiff made various factual declarations by directly citing content from the Reports. Any assertion that they were not used at trial as proof of the truth of various statements in the Reports is belied by the record.

## B. THE REPORTS WERE INADMISSIBLE AS PUBLIC RECORDS

An exception to the general rule prohibiting the admission of hearsay evidence allows for the admission of certain categories of public records and reports. Under this exception, a court can admit:

> Records, reports, statements reduced to writing, or data compilations, in any form, of public offices or agencies, setting forth the activities of the office or agency, or matters observed pursuant to duty imposed by law as to matters which there was a duty to report, . . . unless the sources of information or other circumstances show their lack of trustworthiness.

§ 90.803(8), Fla. Stat. (2015); *see also Lee v. Dep't of Health & Rehab. Servs.*, 698 So. 2d 1194, 1201 (Fla. 1997) (stating that "[u]nder this provision, two types of public records and reports are admissible into evidence: (1) records setting forth 'the activities of the office or agency'; and (2) records of a public office or agency which set forth 'matters observed pursuant to duty imposed by law as to which matters there was a duty to report'" (quoting Charles W. Ehrhardt, *Florida Evidence* § 803.8 (1996 ed.))). Again, "[i]f evidence is to be admitted under one of the exceptions to the hearsay rule, it must be offered in *strict* compliance with the requirements of the particular exception." *Coates v. State*, 217 So. 3d 1048, 1050 (Fla. 4th DCA 2017) (quoting *Yisrael*, 993 So. 2d at 957)).

The Reports do not fall under the first category of the exception because they were not records or reports of "the activities" of the Surgeon General's Office or other government agency. As this court has previously explained, "[t]he exception for 'the activities of the office or agency' is generally understood to include factual reports focused on the essential functions of the office or agency." *Benjamin v. Tandem Healthcare, Inc.*, 93 So. 3d 1076, 1082 (Fla. 4th DCA 2012). To meet this exception, proffered documents may do no more than "simply set forth the activities of the government agency." *Nationwide Mut. Fire Ins. Co. v. Darragh*, 95 So. 3d 897, 900 (Fla. 5th DCA 2012). The types of records or reports admissible under this category include such things as "records showing the receipts and disbursements of a governmental department or official reports of a statistical nature." *Benjamin*, 93 So. 3d at 1082 (listing cases where such examples qualified).

In *Benjamin*, this court deemed admissible a Food and Drug Administration ("FDA") advisory that was "an official report providing information of a statistical nature regarding certain medications" as public

4

"records setting forth the activities of the office or agency" since "[i]t set[] forth the activities of the agency pursuant to the FDA's statutory duty to take appropriate action to ensure drug safety." *Id.* at 1083. This is markedly distinguishable from the instant case because the Reports at issue here contained more than just statistics insofar as they "rel[ied] on information supplied by outside [non-government] sources," and "contain[ed] evaluations or statements of opinion by a public official." *Lee*, 698 So. 2d at 1201.

In line with our decision in *Benjamin*, other cases have also established that the first category of the exception, known as the "activities" category, is intended to encompass only those public records of a factual nature involving the core functions of a government agency, not advocacy reports or compilations and reviews of outside research or contributions. *Compare Darragh*, 95 So. 3d at 900 (holding that printouts of government website allowing users to estimate potential military benefits based upon users' assumptions about the future were inadmissible under section 90.803(8), as they "d[id] not simply set forth the activities of a government agency"), *with Gatlin v. State*, 618 So. 2d 765, 766 (Fla. 2d DCA 1993) (finding that state's affidavit detailing costs of prosecution fell within first category of the public records exception).

The Reports also do not fall within the second category of the public records exception, as they were not "based upon a public official's first-hand observation of an event." *Yisrael*, 993 So. 2d at 959. The Office of the Surgeon General of the United States reports on the health effects of smoking cigarettes on a biennial basis. Compiled with input by various members of the scientific and academic community, the Reports are collections of statements and opinions by numerous authors. Because the majority of the Reports' contributors and editors were not public officials, the Reports at best could be said to represent a collaborative effort by both government and non-government persons. That said, no public official, including the Surgeon General, had *personal knowledge* of the information provided in the Reports. Likewise, most if not all the Reports' authors did not directly observe the testing of the tobacco products referenced or the other matters covered, and instead relied on surveys of relevant literature to draw conclusions therefrom. Hence, there is no basis to conclude that any of the Reports' non-government contributors directly observed the matters that were the subjects of the Reports, or much less had a "duty to report" such observations (as the statute requires). *See* § 90.803(8), Fla. Stat.; *Yisrael*, 993 So. 2d at 959.

5

The *Lee* case is dispositive of this issue. There, a party used as evidence an investigative report prepared by a government employee containing "statements of witnesses as well as [the employee's] opinions and conclusions." 698 So. 2d at 1197. The Florida Supreme Court found that this report was inadmissible "under the public record and reports exception to the hearsay rule." *Id.* at 1200. After addressing the two categories of the public records exception, the court explained that "[i]n adopting this exception, Florida specifically excluded a third type of record that is admissible under the corresponding federal rule: that is, a record setting forth factual findings resulting from an investigation made pursuant to authority granted by law." 698 So. 2d at 1201 (internal quotes and citation omitted). The court explained that, consequent to that specific exclusion, records relying "on information supplied by outside sources or that contain evaluations or statements of opinion by a public official are inadmissible," and determined the government investigative report was inadmissible under the "matters observed" category of Florida's public records exception due to its reliance on statements of non-government witnesses. *Id.*; *see also Carter v. State*, 951 So. 2d 939, 943 (Fla. 4th DCA 2007) (holding that police report containing victim affidavit was not admissible under public records exception); *Reichenberg v. Davis*, 846 So. 2d 1233, 1234 (Fla. 5th DCA 2003) (holding that agency reports of government investigations containing witness interviews were not admissible under public records exception because statements in reports were not based upon personal knowledge of government agent).

This case also draws parallels with *Wetherill v. University of Chicago*, 518 F. Supp. 1387, 1390–91 (N.D. Ill. 1981). In *Wetherill*, the court deemed untrustworthy a report about the effects of a drug published by what is now the Department of Health and Human Services and prepared by an "ad hoc task force" of government professionals and "a large group of consultants" consisting of "both doctors and non-professionals, several of whom were active in organized efforts to expose the allegedly harmful effects of [the drug]." *Id.* Like the Surgeon General's legal authority to issue the Reports here, the creation of the ad hoc report in that case derived from the Surgeon General's statutory authority. *Id.* at 1388. Nonetheless, the court held the report was inadmissible for numerous reasons, including untrustworthiness. *Id.* at 1389–91. While several factors independently contributed to the report's lack of trustworthiness, the court was "particularly troubled by the presence of interested parties on the consulting staff" who had been "actively involved" in litigation related to the drug. *Id.* at 1390–91. The Reports at issue here are similar to the report deemed inadmissible in the *Wetherill* case, as they were not

the product of a "neutral fact-finding investigation."[3]  *Id.* at 1391.  For that reason, our supreme court has cautioned that "in appropriate cases, both the business- and public-records exceptions are subject to 'trustworthiness' exclusions (i.e., if the records — despite their otherwise admissible status — show a lack of trustworthiness, courts may deem the records inadmissible)."  *Yisrael*, 993 So. 2d at 961.

The Surgeon General's Reports clearly fit only under that third category found in the Federal Rules as records relying on information supplied by outside sources and gathered during an investigation.  *Lee*, 698 So. 2d at 1201.  The United States Court of Appeals for the Eighth Circuit in *Boerner v. Brown & Williamson Tobacco Co.*, 394 F.3d 594, 600 (8th Cir. 2005), reached that same conclusion when it affirmed a district court's admission of several Surgeon General Reports on smoking as public records falling under that third category.  The Eighth Circuit concluded that even though the reports included factual findings "made by independent scientists and not on the basis of independent research by the Surgeon General," they were admissible because they were prepared by "a disinterested governmental agency" pursuant to a legal obligation "to report new and current information on smoking and health to the U.S. Congress."  *Id.* at 600–01 (citation omitted).  However, as the *Lee* opinion instructs, while such records may be admissible under the rules of the federal court system, they are clearly inadmissible under the Florida Evidence Code. 698 So. 2d at 1201.

Therefore, given the inapplicability of the "activities" category to these Reports, this court finds that they do not fall within either category of Florida's public records exception to hearsay.  Likewise, the Reports were also inadmissible under the "matters observed" category of the public records exception because they were compilations of studies, research and conclusions of various non-governmental authorities.  Charles W. Ehrhardt, *Florida Evidence* § 803.8 (2017 ed.) ("When the information in the record is based on the personal knowledge of a person who is not a public official or employee, it is not admissible under 90.803(8).").

---

[3] The Reports are part scientific, part policy statement, and part public health advocacy.  For example, in addition to reporting the results of scientific study in the field, the 2014 Report included a chapter titled "A Vision for Ending the Tobacco Epidemic," which stated that "[t]his nation must create a society free of tobacco-related death and disease."

## C. THE REPORTS WERE INADMISSIBLE AS ADOPTIVE ADMISSIONS

Here, we consider Plaintiff's contention that third-party statements incorporated not by the direct use of selected quotations but by hyperlink to an entire document is sufficiently adoptive to permit an opposing party's use of quotes from that document as admissions under section 90.803(18)(b), Florida Statutes (2015). In arguing for the admission of the Reports, Plaintiff cited portions of PM's website that directed visitors to be "guided by" the Surgeon General's messages, stated that PM "support[s] a single, consistent public health message on the role of smoking in the development of disease in smokers, and on smoking and addiction," and provided a link to the Reports. Along the same lines, Plaintiff noted RJR's website also provided links to the Reports and stated that RJR "believes that individuals should rely on conclusions of the U.S. Surgeon General . . . when making decisions regarding smoking."

In light of these statements and links, the crux of Plaintiff's argument is that Defendants effectively adopted the statements to which their websites provided links. In essence, Plaintiff asks us to accept the proposition that linking to third-party web content, thereby acting as a conduit to that information, evinces an endorsement or agreement with every statement and bit of information contained therein. On this record, we decline to do so.

Section 90.803(18)(b) defines an adoptive admission as "[a] statement that is offered against a party . . . of which the party has manifested an adoption or belief in its truth." Alternatively stated:

> [W]hen an adverse party manifests a belief in or adopts the statement of another person as his or her own, the statement is treated as an adoptive admission under section 90.803(18)(b). An adoptive admission occurs either when there is a *direct expression* by the adverse party assenting to the statement of another *or when the conduct of the adverse party circumstantially indicates the party's assent* to the truth of the statement.

*Jones*, 127 So. 3d at 624 (emphases added) (internal quotes and citations omitted) (holding that age disclosed on a driver's license constituted an admission where the party swore to the truth of the statements made in the license application); *see Twilegar v. State*, 42 So. 3d 177, 198 (Fla. 2010) (finding that jailhouse phone call was admissible as adoptive admission where inmate "was a knowing and active participant in the

8

recorded conversations and . . . had ample opportunity to refute or contradict any of the statements that were adverse to his interests; instead, he acquiesced in the statements"); *State v. Palmore*, 510 So. 2d 1152, 1153 (Fla. 3d DCA 1987) ("Palmore expressly manifested his belief in the truth of the statements contained in the motion to dismiss, thereby adopting those statements as his own."); *Saudi Arabian Airlines Corp. v. Dunn*, 438 So. 2d 116, 119 (Fla. 1st DCA 1983) (ruling that company's use of employee's previous deposition testimony to support its summary judgment motion constituted an adoptive admission); *see also State v. Anderson*, 210 Ariz. 327, 339, 111 P.3d 369, 381 (2005) (en banc) ("Adoption occurs when a defendant affirmatively agrees to statements made in his presence, or expounds on the statements by adding his own 'explanations and comments.' " (citation omitted)).

Under section 90.803(18)(b), certain statements made or adopted by an opposing party are admissible and may be offered against that party. As discussed in greater detail below, Plaintiff relies on the theory of "adoption by use," whereby a party's use of or reliance on the hearsay statement of another may constitute an "adoption" of the statement's truth within the meaning of the rule. *See, e.g.*, *White Indus., Inc. v. Cessna Aircraft Co.*, 611 F. Supp. 1049, 1062–63 (W.D. Mo. 1985) (discussing the "adoption by use" theory under Federal Rule of Evidence 801(d)(2)(B)).[4]

Unlike other hearsay exceptions, an admission does not require a guarantee of trustworthiness; because section 90.803(18)(b) concerns either a party's own statement or a statement that may be attributed to a party, a policy of fairness permits those statements to be used against that party. *Ring Power Corp. v. Condado-Perez*, 42 Fla. L. Weekly D1426, D1428 (Fla. 2d DCA June 21, 2017); *see* Fed. R. Evid. 801(d)(2) advisory committee's notes ("Admissions by a party-opponent are excluded from the category of hearsay on the theory that their admissibility in evidence is the result of the adversary system rather than satisfaction of the conditions of the hearsay rule."). Since "a party can hardly complain that he had no opportunity to cross-examine himself at the time the admissions were made . . . the fundamental reason for excluding this hearsay evidence is not present." *Metro. Dade Cty. v. Yearby*, 580 So. 2d 186, 188 (Fla. 3d DCA 1991); *see also Globe v. State*, 877 So. 2d 663, 673 (Fla. 2004) ("[S]tatements admitted as adoptive admissions do not implicate the Confrontation Clause.").

---

[4] Federal Rule of Evidence 801(d)(2)(B) on adoptive admissions is identical to the Florida Evidence Code under section 90.803(18)(b).

Numerous cases have held that statements found on websites are hearsay, and must be viewed as such when considering whether they should be admitted into evidence. *See, e.g., United States v. Jackson*, 208 F.3d 633, 637 (7th Cir. 2000) ("The web postings were not statements made by declarants testifying at trial, and they were being offered to prove the truth of the matter asserted. That means they were hearsay."). Generally, a party's website content may be considered as its own statement and thus used as evidence against it, *see, e.g., Van Westrienen v. Americontinental Collection Corp.*, 94 F. Supp. 2d 1087, 1109 (D. Or. 2000), but a finding of adoptive approval of a third party's statement must be decided in light of the circumstances surrounding the statement's use. *Shemman v. Am. S.S. Co.*, 280 N.W.2d 852, 860 (Mich. Ct. App. 1979).

Consistent with both the Florida and Federal rules, it is not enough that an opposing party "merely repeats" the underlying hearsay; indeed, the party must make use of the hearsay in a manner that "manifest[s] a belief in [its] trustworthiness," or otherwise reflects the party's incorporation of the substance of the hearsay into a statement that the party itself either made or authorized. *See Sea-Land Serv., Inc. v. Lozen Int'l, LLC*, 285 F.3d 808, 821 (9th Cir. 2002) (determining that an employee's forwarded e-mail originating from a third party was admissible since it was prefaced with language manifesting a belief in the veracity of the original e-mail's content); *Schering Corp. v. Pfizer Inc.*, 189 F.3d 218, 238–39 (2d Cir. 1999) (holding that survey results were adoptive admissions where an employee of defendant wrote a report summarizing the results of a survey of physicians and drawing conclusions about the types of messages being communicated to physicians by company representatives); *Wagstaff v. Protective Apparel Corp.*, 760 F.2d 1074, 1078 (10th Cir. 1985) (finding that newspaper articles were admissible under rule 801(d)(2)(B) where the defendant reprinted and distributed articles that made representations about the defendant's financial condition because "[b]y reprinting the newspaper articles and distributing them to persons with whom defendants were doing business, defendants unequivocally manifested their adoption of the inflated statements made in the newspaper articles"); *Grundberg v. Upjohn Co.*, 137 F.R.D. 365, 370 (D. Utah 1991) (holding that a party adopted clinical reports by non-party physicians when it used the reports to help secure FDA approval of new drug). Thus, a website link *alone* cannot be construed as either an admission, tacit approval or acceptance of the content of the linked information or third-party statement. To prove that a website link to third-party sources amounts to an adoptive admission, a proponent must show that the opposing party also "manifested an adoption or belief in the truth" of the statements in those links. § 90.803(18)(b), Fla. Stat.

10

Simply providing a hyperlink on a website to a document or source does not constitute an *express* manifestation of an adoption or belief in the statements and opinions contained within them. *Janus Capital Grp., Inc. v. First Derivative Traders,* 564 U.S. 135, 148 n.12 (2011) (reasoning that defendant was not subject to liability for securities fraud by providing link to fraudulent prospectus on its website since "[m]erely hosting a document on a [website] does not indicate that the hosting entity adopts the document as its own statement or exercises control over its content"). The fact that a party links to or posts on its website material from another source, or otherwise hosts or references third-party documents on its website does not by itself constitute a clear demonstration of intent to adopt. *See Fenner v. Suthers,* 194 F. Supp. 2d 1146, 1149 (D. Colo. 2002) (holding that material from websites was inadmissible because proponent failed to explain whether the source "sponsors, endorses, collects, or simply provides the information on the [websites]"); *Aikens v. Cty. of Ventura,* No. B221992, 2011 WL 2811458, at *5 (Cal. Ct. App. June 30, 2011) (ruling that county's posting of a study performed by federal government did not constitute an adoptive admission of the truth of the contents of the study, as "[t]he mere posting of a document on a party's website does not manifest the party's 'adoption' of the document or 'his belief in its truth' ").[5]

The act of "adoption" in this case did not occur when Defendants simply provided a link to the Reports as a means for consumers to obtain a balance of information for making informed choices about product usage. When doing so, a party does not vouch for the veracity of the linked information any more than a sender of a text or e-mail containing an attached news article, e-mail, or some other document necessarily endorses or adopts all the attachment's contents (without otherwise manifesting an adoption or belief in the truth thereof). *Compare Janus Capital Grp., Inc.,* 564 U.S. at 148 n.12, *with United States v. Safavian,* 435 F. Supp. 2d 36, 43–44 (D.D.C. 2006) (finding that "[t]he context and content of certain e-mails demonstrate clearly that Mr. Safavian manifested an adoption or belief in the truth of the statements of other people as he forwarded their e-mails," while "[o]ther e-mails forwarded by

---

[5] This analysis, however, does not restrict the ability to use such posts or links to prove notice, possession, or knowledge. *See, e.g., United States v. Cameron,* 762 F. Supp. 2d 152, 162 (D. Me. 2011) (explaining that possession of child pornography on a party's computer could be an admission of committing the crime of possession), *aff'd in part, rev'd in part on other grounds,* 699 F.3d 621 (1st Cir. 2012).

Mr. Safavian do not clearly demonstrate his adoption of the contents, and therefore are not admitted under Rule 801(d)(2)(B)").

Defendants argue that the Reports could not be adoptive admissions because Defendants had not, and as a practical matter could not, independently verify or agree with all the statements contained therein.[6] Although this is certainly true, that is not the test for admissibility under section 90.803(18)(b). The adoption of a third-party statement does not require personal knowledge of the statement's veracity. *Pillsbury Co. v. Cleaver-Brooks Div. of Aqua-Chem, Inc.*, 646 F.2d 1216, 1218 n.2 (8th Cir. 1981). All that is required to find an adoption of another's statement is some form of agreement, or in other situations, silence under circumstances where the statement "was so accusatory in nature that . . . silence may be inferred to have been assent to its truth." *State v. Hernandez*, 875 So. 2d 1271, 1274 (Fla. 3d DCA 2004).

Although the use of a specific disclaimer certainly evinces the intent that referenced third-party statements should not be perceived as adoptive admissions, the absence of one does not constitute silence sufficient to create a binding admission. Regardless, Defendants affirmatively disclaimed any acceptance or reliance on the Reports so as to preclude the application of section 90.803(18)(b). For example, PM's disclaimer on their website states as follows:

> The Altria Corporate Websites may include links to other sites, some of them operated by other Altria Group companies and some of them operated by third parties. These links are provided as a convenience to you and as an additional avenue of access to the information contained therein. We have not necessarily reviewed all of the information on other third party sites and are not responsible for the content of any other third party sites or any products or services that may be offered through other third party sites. *Third-party sites may contain information with which we do or do not agree. Inclusion of links to other sites should not be viewed as our endorsement of the content of linked sites.* We are not responsible for any losses,

---

[6] While only excerpts from the Reports were admitted at trial, we note that some of the Reports linked on Defendants' websites contained nearly a thousand pages of text. The 2014 Report, for example, was 943 pages with 87 authors listed, including numerous scientists who were neither public officials nor employed by the U.S. Government or any of its agencies.

12

> damages or other liabilities incurred as a result of your use of any linked third party sites.[7]

(Emphasis added). Similarly, RJR's disclaimer on their website states, "[t]he links on this page are provided as a convenience, but R.J. Reynolds Tobacco Company is not responsible for the content on the linked websites. The statements and views available on those sites do not necessarily represent the views of R.J. Reynolds or its management."[8]

Plaintiff alleges that Defendants' adoption arises not just from mere linking, but also from advising consumers that they should be "guided by" and "rely on" the linked Reports. Such language does not equate to an expression of intent to adopt the statements as their own, especially when considered in conjunction with the more specific disclaimers in place on their websites. These disclaimers show that Defendants unambiguously repudiated any endorsement or ratification of the content of the sources to which they linked. It cannot be said that Defendants intended to adopt these third-party statements while simultaneously disclaiming their intent to do so. Stating that consumers should "rely on" or be "guided by" what the Surgeon General says about smoking and health issues is a far cry from "manifest[ing] an adoption or belief in [the] truth" of the specific statements in the Reports. *See* § 90.803(18)(b), Fla. Stat. Nothing else found on Defendants' websites "manifested an adoption or belief in [the] truth" of any statements in the linked Reports, and Defendants did not otherwise manifest assent thereto. *Id.* Here, there was no "direct expression" by Defendants assenting to the truth of the specific, prejudicial excerpts from the Reports that Plaintiff presented to the jury. To the contrary, Defendants explicitly clarified on their websites that they did not necessarily agree with the positions contained in the documents linked.

The internet remains "one large catalyst for rumor, innuendo, and misinformation," lacking effective formal mechanisms of authentication.

---

[7] *Terms of Use*, Altria (September 2015), http://www.altria.com/Pages/Terms-of-Use.aspx. It was undisputed that the PM website contained a similar disclaimer at all times material to this cause of action, although its wording may have varied insignificantly over time.

[8] *Making Decisions Regarding Tobacco Use*, R.J. Reynolds Tobacco Company, http://www.rjrt.com/tobacco-use-health/public-health-information/ (last visited August 3, 2017). As previously stated, though the current wording of this disclaimer may not be the same as it was at the time of this cause of action, any difference in the wording is not significant to our conclusion.

*St. Clair v. Johnny's Oyster & Shrimp, Inc.*, 76 F. Supp. 2d 773, 774–75 (S.D. Tex. 1999).  Despite advances in technology and the ability to fact-check more readily, separating fact from fiction nonetheless remains a daunting task for the average consumer of internet information.  With that comes the inherent risk that inaccurate information can appear legitimate, and may inadvertently be perpetuated despite the best of intentions.  Understanding that reality, holding a purveyor of web content accountable for providing its viewers access to a broad range of information would open a "Pandora's Box" where they could be legally bound by almost any statement or content found on a linked webpage or document — including unfiltered visitor comments, third-party advertising, or additional links to other sources — all without regard to whether that content is disputed, controversial, or conflicting.  This would serve no purpose other than to chill the dissemination of information by deterring website owners or operators from incorporating any third-party content for fear of tying themselves to the yoke of those sources.[9]

Defendants' use of hyperlinks to the Reports was neither a direct nor indirect expression of assent, and did not represent their "intended assertion of the truth of the information therein."  *White Indus., Inc.*, 611 F. Supp. at 1062.  Further, Defendants posted clear disclaimers as to any agreement therewith, made no statements of express agreement with the contents of the linked documents, and did not otherwise use selected quotes from the Reports for their own purposes.  Accordingly, we find that the linked Reports on Defendants' websites do not qualify as adoptive admissions under section 90.803(18).

D. THE EXPERT'S REFERENCES TO THE REPORTS WERE IMPROPER

One of Plaintiff's experts at trial was Dr. Robert Proctor, who was one of the editors of the 2014 Report.  Using other published sources for impeachment purposes, Defendants cross-examined Dr. Proctor on whether the public health community was divided about the dangers of filtered cigarettes compared to unfiltered cigarettes.  On redirect examination, Plaintiff attempted to counter the impeachment by inquiring about the 2014 Report's conclusions (the trial court had already improperly permitted the Report to be received into evidence).  RJR

---

[9] Additionally, a website owner may not be in control or aware of what changes, edits or updates are made to its linked content.  Because third-party content is controlled by third parties, what may have initially been a link to "approved" content might later become something quite different from what was intended to be conveyed.

objected to improper bolstering, asking how the Report fit "within the scope of cross-examination"; Plaintiff responded that the Report was relevant because it "deals with the subject of filters and whether filters were actually safer." The trial court overruled the objection. Thereafter, Dr. Proctor testified about the 2014 Report's conclusion that filtered cigarettes increased the risk of adenocarcinoma (a type of lung cancer) by causing smokers to inhale more deeply, and by ventilating in a way that "increases certain poisonous compounds." On appeal, Defendants argue that Plaintiff should not have been permitted to use the 2014 Report to bolster the testimony of her expert witness. On this point, we also agree with Defendants.

It is well established that "experts cannot bolster or corroborate their opinions with the opinions of other experts who do not testify," as "[s]uch testimony improperly permits one expert to become a conduit for the opinion of another expert who is not subject to cross-examination." *Schwarz v. State*, 695 So. 2d 452, 455 (Fla. 4th DCA 1997) (holding that any probative value of bolstered testimony is "substantially outweighed by the danger of unfair prejudice, confusion of issues, [or] misleading the jury" (quoting § 90.403, Fla. Stat.)); *accord Tolbert v. State*, 114 So. 3d 291, 294 (Fla. 4th DCA 2013) ("Although an expert may rely on hearsay in reaching the expert's opinion, an expert's testimony may not merely be used as a conduit for the introduction of the otherwise inadmissible evidence." (internal quotes and citation omitted)); *see also Liberatore v. Kaufman*, 835 So. 2d 404, 407 (Fla. 4th DCA 2003) (listing cases prohibiting bolstering of expert testimony on direct examination). The use of articles, journals or treatises as substantive evidence has long been held improper under Florida law "because the opposing party cannot cross-examine and impeach the source of the hearsay." *Darragh*, 95 So. 3d at 901 (quoting *Duss v. Garcia*, 80 So. 3d 358, 364 (Fla. 1st DCA 2012)). In the same way, allowing an expert to bolster his or her testimony is strictly forbidden because it "deprives the opposing party of the opportunity to cross-examine the non-testifying experts." *Miller v. State*, 127 So. 3d 580, 586 (Fla. 4th DCA 2012).

Florida's rule prohibiting the bolstering of expert opinions with authoritative publications derives from section 90.706, Florida Statutes (2015), which allows the use of a publication on cross-examination of an expert witness if the expert recognizes it as authoritative. *State Dep't of Corr. v. Junod*, 217 So. 3d 200, 208 (Fla. 1st DCA 2017). Because section 90.706 only provides for the use of such treatises or publications on cross-examination, the statute "does not allow statements in a learned treatise to be used as substantive evidence since the treatise is hearsay if it is

offered as substantive evidence." *Green v. Goldberg*, 630 So. 2d 606, 609 (Fla. 4th DCA 1993). Such authoritative sources "cannot be used to bolster the credibility of an expert or to supplement an opinion of the expert which has already been formed." *Erwin v. Todd*, 699 So. 2d 275, 278 (Fla. 5th DCA 1997); *see Linn v. Fossum*, 946 So. 2d 1032, 1039 (Fla. 2006) ("This is consistent with the general rule that it is improper on direct examination to introduce evidence to support the credibility of a witness."). "[T]he mere mention of [a publication] provides credibility to the expert's opinion not available to the opposing expert." *Cordoba v. Rodriguez*, 939 So. 2d 319, 322 (Fla. 4th DCA 2006).

Expert witnesses may properly rely upon hearsay in arriving at an opinion so long as "the hearsay is of the type reasonably relied upon by experts in the field." *Vega v. State Farm Mut. Auto.*, 45 So. 3d 43, 45 (Fla. 5th DCA 2010) (explaining that facts or data used to support the opinion expressed "need not be admissible in evidence if they are of the type reasonably relied upon by experts in the subject"); *accord Tolbert*, 114 So. 3d at 294. Still, experts may not bolster their testimony by testifying about the substantive content of published materials. *See Linn*, 946 So. 2d at 1038–39 ("Usually, experts can testify that they formed their opinions in reliance on sources that contain inadmissible information without also conveying the substance of the inadmissible information.").

In *Philip Morris, Inc. v. Janoff*, 901 So. 2d 141, 143 (Fla. 3d DCA 2004), the defendants asked their expert witness on redirect examination whether various "authoritative textbooks and journals" supported the plaintiff's theory of causation, which was contrary to that witness's medical opinion on causation. The expert testified that those materials did not support the plaintiff's causation theory. *Id.* The trial court found that this constituted impermissible bolstering and ordered a new trial. *Id.* at 142. The Third District Court of Appeal affirmed, reasoning that defense counsel's "listing the litany of authoritative sources" that lacked support for the plaintiff's causation theory "was solely to bolster the defense expert's opinion by showing that his opinion must be correct because it was supported by the lack of articles stating otherwise." *Id.* at 145; *see also In re S.E.*, 946 So. 2d 620, 622 (Fla. 2d DCA 2007) (reversing for new trial where expert "improperly bolstered his opinion by testifying regarding the contents of three articles published in the Journal of Neurosurgery"); *5 Star Builders, Inc., of W.P.B. v. Leone*, 916 So. 2d 1010, 1012 (Fla. 4th DCA 2006) (ordering new trial where third-party hearsay documents "served only to substantiate [the witness's] testimony and bolster her own credibility").

Here, Plaintiff impermissibly bolstered Dr. Proctor's testimony with the 2014 Report by asking on redirect examination whether he agreed with various excerpts from the Report. The expert's reference to the Report "served only to impermissibly bolster [his] credibility . . . and diminish the credibility of the defense expert's opinions." *Donshik v. Sherman,* 861 So. 2d 53, 56 (Fla. 3d DCA 2003).

The facts of *Donshik* are analogous. There, the Third District remanded the case for a new trial because the plaintiff used a study published in a medical journal to bolster their experts' opinions, even though one of those experts "was the chair of the executive committee and publication committee for this study." 861 So. 2d at 55 n.2. This is comparable to Dr. Proctor's role as an editor of the 2014 Report that was used to bolster his testimony. Since Dr. Proctor helped to edit the Report, the conclusions invoked therefrom during his redirect examination were not just those of other contributors that were consistent with his opinions at trial. As a result, Plaintiff was improperly permitted to bolster her expert's testimony with the substance of an inadmissible government report that directly incorporated the expert's own opinions and work product. As this court has previously noted, "[a]n expert bolstering his own opinion by inadmissible evidence deprives the parties of a fair trial" and is error. *Cordoba,* 939 So. 2d at 323.

E. THE ADMISSION AND USE OF THE REPORTS WERE NOT HARMLESS

An error in the admission of evidence requires a new trial unless "the beneficiary of the error [can] prove that there is no reasonable possibility that the error complained of contributed to the verdict." *Special v. W. Boca Med. Ctr.,* 160 So. 3d 1251, 1253 (Fla. 2014). As we have explained, the trial court erroneously admitted the Reports into evidence, allowing Plaintiff to unfairly buttress her factual contentions concerning the history of the tobacco industry and the safety of smoking using the imprimatur of the Surgeon General of the United States. Further, by bolstering the opinion testimony of Dr. Proctor with substantive content from the 2014 Report, Plaintiff improperly enhanced the expert's credibility with the jury. This court has held that such improper bolstering can be so prejudicial as to rise to the level of fundamental error and require a new trial. *Cordoba,* 939 So. 2d at 323.

The Reports did not constitute original research performed by the Office of the Surgeon General; rather, they summarized and compiled a mix of information, opinion and advocacy from outside sources. As such, the Reports "represent[] a classic example of hearsay," being "nothing more

than . . . written statement[s] of the declarant[s]" who drafted the various contributions. *Sikes v. Seaboard Coast Line R.R. Co.*, 429 So. 2d 1216, 1220 (Fla. 1st DCA 1983) (holding that the state-issued Florida Handbook for Drivers was inadmissible hearsay). Admitting the Reports at trial effectively presented the jury with the opinions and conclusions of numerous extra-judicial experts whom Defendants could not cross-examine. *See Darragh*, 95 So. 3d at 901.

"Because the battle of experts has become as much a part of a trial as the conflict that the litigation addresses," *Special*, 160 So. 3d at 1260, the cumulative harmful effect of these errors prejudiced Defendants by depriving them of a fair trial. *See R.J. Reynolds v. Calloway*, 201 So. 3d 753, 762 (Fla. 4th DCA 2016) ("[I]n evaluating whether the errors were harmless, we may consider the cumulative effect of preserved and unpreserved error." (internal quotes and citation omitted)). As the *Donshik* court held regarding an improperly admitted report, "[w]here, as here, the competing expert opinions, on both sides, were the focal point of the trial, we cannot deem the error in the introduction of the [Reports] . . . to be harmless." 861 So. 2d at 56.

Considering the extensive use of these Reports at trial, Plaintiff cannot meet her burden to show that their admission into evidence and use of the Reports by Plaintiff's counsel was harmless error. *See Special*, 160 So. 3d at 1256. For the foregoing reasons, we reverse and remand for a new trial.

*Reversed and Remanded for New Trial.*

CIKLIN, J., and METZGER, ELIZABETH A., Associate Judge, concur.

\*　　　\*　　　\*

**Not final until disposition of timely filed motion for rehearing.**

18